IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| CHARLES THOMAS | ) | |
| and CAROLYN THOMAS, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 150539C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appeal Defendant's deficiency assessment dated November 3, 2015, for the

2012 tax year. A trial was held in the Oregon Tax Court Mediation Center on March 30, 2016,

in Salem, Oregon. Michelle Hughes, Oregon Licensed Tax Consultant, appeared on behalf of

Plaintiffs. Charles Thomas (Thomas) testified on behalf of Plaintiffs. Kimberley Young

(Young) appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1, 2, 3, and 6 were

received without objection. Defendant's Exhibits C, E, G, H, K, and L were received without

objection.

## I. STATEMENT OF FACTS

A.     *Plaintiffs' Trial Testimony and Documentary Evidence*

Thomas testified that he was a seasonal fresh water fishing guide in Alaska who earned

money taking customers on guided fishing trips. Thomas testified that he typically worked in

Alaska from May until the middle or end of September each year, including 2011 and 2012 (as

well as other years not relevant to this case). The parties agree that Thomas was licensed both in

---

[1] This Final Decision incorporates without change the court's Decision, entered July 13, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

Alaska and Oregon to conduct guided fishing trips. Thomas operated under the business name of Chuck Thomas Professional Sportfishing. (Ptfs' Exs 2 at 1-2, and 1 at 2.)

According to the undisputed testimony, Thomas kept a written record of all customers who he took on guided fishing tours in Alaska, as required by Alaska fish and wildlife rules. As the court understands the testimony, that log only included the names of the individuals boarding the boat and their Alaska fishing license number. There may have been other information in the log, but Thomas was not required to, nor did he, record the amount of money each customer paid for the guided fishing trip. Plaintiffs did not submit that log into evidence. Thomas testified that customers paid either by cash, check or credit card, but later during trial testified that customers rarely pay in cash "these days."

Plaintiffs submitted Thomas's Joint Sales Tax Return for the Kenai Peninsula Borough for the second and third quarters of 2011. (Ptfs' Ex 1.) Thomas reported gross sales totaling $32,003 for those two quarters, which, according to his testimony, were his total annual gross receipts for 2011 from his Alaska fishing business. (*Id*. at 1-2.) That matches the gross receipts Thomas reported on his federal Schedule C for 2011. (Ptfs' Ex 2.) Thomas further testified that he made deposits in 2011, reflected in the business bank statements he provided, totaling $23,319, which is $8,684 less than the gross receipts Plaintiffs reported for the two quarters Thomas worked in Alaska that year. Thomas testified that the $8,684 difference was from cash he earned from his Alaska guided fishing trips that he brought back with him to Oregon. Thomas testified that he had nontaxable income in the form of gifts received from friends. He did not elaborate. He then testified he made bank deposits in December 2011 and in January and February 2012 from the $8,684 cash that he had on hand from the money he brought back from Alaska in 2011. Thomas testified that the balance in his bank account was getting low in

December 2011 so he started making deposits from that cash on hand. On cross examination, Thomas testified that he returned to Oregon from Alaska in September 2011 and that he did not work after returning to Oregon from Alaska that year.

Plaintiffs submitted Thomas's business bank account records for the month of April, and June through December, of 2011. (Ptfs' Ex 3.) Plaintiffs made reference to those bank statements during the trial, but there was no direct testimony as to the contents or significance of those documents. Plaintiffs did not submit any bank statements from 2012. The court reviewed Plaintiffs' 2011 bank statements and gleaned the following relevant information. Thomas's April 2011 business bank statement shows two direct deposits totaling $2,000. (*Id*. at 1.) Thomas's bank statements show total deposits of $1,294 in June 2011 from five separate electronic deposits. (*Id*. at 4.) Total electronic and direct deposits for July, August, and September were $9,256.10, $5,565.80, and $3,603.10, respectively. (*Id*. at 7, 10 and 13.) The deposits for both August and September include single direct deposits towards the end of those months in the amounts of $3,525 and $3,325, respectively. (*Id*. at 10, 13.) There were no deposits in October or November, and one direct deposit of $1,500 in December of 2011. (*Id*. at 16, 18 and 20.)

B.    *Defendant's Audit*

Defendant selected Plaintiffs' 2012 joint tax return for audit in August 2014. (Def's Ex D at 1.) On December 4, 2014, Defendant issued a proposed auditor's report increasing Plaintiffs' taxable income by $12,766 based on a bank deposit analysis performed by the auditor leading to an adjustment to Plaintiffs' Schedule C gross receipts. (*Id*. at 11-13.) That proposed adjustment resulted in additional tax owing in the amount of $1,150. (*Id*. at 11.) Plaintiffs were given approximately two weeks to provide additional documentation if they disagreed with that

proposed adjustment. (*Id*. at 9.) The parties agreed during trial that Plaintiffs provided Defendant with additional information. On January 21, 2015, Defendant issued a final Auditor's Report revising the amount of additional gross receipts down from $12,766 to $3,850. (Def's Ex F at 4.) That adjustment was based on information Plaintiffs provided showing that they had $5,028 in 2011 tax refunds, "$487 in reimbursements already reported and taxed on the secondary taxpayer's W-2," and "an explanation of $3,400 in deposits that were transferred from [Plaintiffs'] personal account to the business account." (*Id*.) The final Auditor's Report found $3,850 in unreported income which resulted in a tax to pay of $351 (down from the original determination of $1,150 tax to pay). (*Id*. at 3.) Plaintiffs disagreed with Defendant's final Audit Report and submitted a written request for conference in February 2015. (Def's Ex K at 1.) Prior to the audit conference, held September 10, 2015, Plaintiffs submitted a letter to Defendant dated August 25, 2015, stating: "I, Carolyn Thomas, loaned Charles E. Thomas, Jr. (Chuck Thomas Professional Sportfishing LLC) $4000 in cash in increments during the early months of 2012 to pay business expenses." (*Id*. at 9.) Defendant issued an audit conference letter November 3, 2015, concluding that the August 25, 2015, letter and explanation given by Thomas during the audit conference were not sufficient to prove that Plaintiffs had not understated their income by $3,850. (Def's Ex G at 1.) Plaintiffs appealed that determination to this court.

C.     *Defendant's Position*

Defendant's representative Young, who reviewed Plaintiffs' 2012 tax return and records they provided before issuing the proposed and final auditor reports, testified about the audit process and statements Thomas allegedly made during the audit interview. Young also briefly went over her proposed and final auditor's reports. Young also testified that the letter written by Carolyn Thomas regarding an alleged loan in the amount of $4,000 was not considered

sufficient, by itself, to change Defendant's finding that Plaintiffs had $3,850 in unreported income. Young further testified that the letter regarding the $4,000 loan was not consistent with Thomas's trial testimony about the $8,684 in cash he brought back from Alaska in 2011 and kept on hand for several months until his business account ran low on funds and he began depositing that cash into his business account in December 2011, and January and February 2012. Young concluded by stating that Plaintiffs had not provided any accurate records regarding Thomas's earned income, that there was no third-party substantiation to support Plaintiffs' assertion that they had cash on hand that accounted for the additional unreported income, but only Thomas's testimony. Defendant therefore requested that the court uphold its audit determination.

## II. ANALYSIS

The issue in this case is whether Plaintiffs have established that the $3,850 Defendant added to their 2012 Federal Schedule C, gross receipts, should be reversed. Plaintiffs bear the burden on proof and must establish their case by a preponderance of the evidence. ORS 305.427.[2] This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971) (citation omitted).

Plaintiffs have provided the court with virtually no persuasive evidence regarding the disputed $3,850 Defendant determined was unreported Schedule C business income. Plaintiffs acknowledge that there is a difference of $3,850 between the Schedule C income they reported in 2012 and their "bank statements." Plaintiffs submitted an exhibit showing the $3,850 difference between the reported 2012 Schedule C income and the bank deposits shown on their statements for 2012, but they did not submit their 2012 bank statements into evidence, or even exchange

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

those documents prior to trial as possible evidence to be introduced at trial. Plaintiffs have simply asked court to accept Thomas's sworn testimony that he brought $8,684 back to Oregon with him from Alaska in September 2011 and later deposited that money into his business account sometime in 2012. That testimony is inconsistent with the letter Plaintiffs sent to Defendant during the audit stating that Carolyn Thomas loaned Thomas's fishing business "$4000 in cash in increments during the early months of 2012 to pay business expenses." (Def's Ex K at 9.) To further confuse matters, there was a brief bit of testimony from Thomas that the "key to the case" was nontaxable income that either Thomas or Plaintiffs received from friends in the form of gifts. It is unfortunate that Thomas did not keep track of the money his customers paid him to go on his guided fresh water fishing excursions. A log book or receipts would have been helpful in establishing Thomas's 2012 business earnings.

### III. CONCLUSION

On the record before it, the court concludes that Plaintiffs have failed to establish by a preponderance of the evidence that they did not underreport Thomas's 2012 business income by $3,850. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied and Defendant's 2012 assessment is upheld.

Dated this ____ day of August 2016.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on August 2, 2016.*